[Docket No. 25]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| TRUSTEES OF THE IBEW LOCAL 351 PENSION, SURETY, WELFARE, JOINT APPRENTICESHIP AND TRAINING COMMITTEE, AND SOUTH JERSEY ELECTRICAL WORKERS TEMPORARY DISABILITY FUNDS, et al.,<br><br>Plaintiffs,<br>v.<br><br>URBAN SIGN & CRANE, INC., et al.,<br>Defendants. | No. 23-CV-18809 (RMB) (EAH)<br><br>**OPINION** |

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter is before the Court on Plaintiffs' Motion for Default Judgment pursuant to FED. R. CIV. P. 55(b)(2). [Docket No. 25.] The Trustees of the International Brotherhood of Electrical Workers ("IBEW") Local 351 Pension, Surety, Welfare, Joint Apprenticeship and Training Committee, and South Jersey Electrical Workers Temporary Disability Funds (the "Trustees") and the IBEW Local Union No. 351 (the "Union," and collectively with the Trustees, the "Plaintiffs") request a default judgment against Defendants Urban Sign & Crane, Inc., Urban Manufacturing, LLC, and D2 Manufacturing, LLC (collectively, the "Defendants") who failed to answer, appear, or otherwise defend this action. For the reasons discussed more fully below, the motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Trustees are fiduciaries of various funds providing pension, security, welfare, and temporary disability benefits to Union employees (the "Funds") within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1002(21)(A). The Funds represent trust funds established and maintained pursuant to section 302(c)(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5), as well as ERISA-authorized multiemployer benefit funds, 29 U.S.C. § 1002(1)–(3). A collective bargaining agreement ("CBA") with the Union required Urban Sign to make timely contributions to the Funds on behalf of eligible beneficiary employees. [Docket No. 16 ¶¶ 1, 28.] And to ensure compliance, the Trustees maintain audit rights under the CBA. [*Id.* ¶ 29.]

Having not received any contributions or the initial security deposit towards contributions, the Trustees attempted to exercise their audit rights under the CBA to confirm the amount Urban Sign owes the Funds. [*Id.* ¶ 45.] Defendants never responded. [*Id.* ¶ 46.] Plaintiffs later discovered Urban Manufacturing and D2 Manufacturing's existence and shared ownership with Urban Sign. [Docket No. 16 ¶¶ 35–36, 39–40.] Plaintiffs allege Urban Sign's ownership created Urban Manufacturing and D2 Manufacturing for the sole and express purpose of avoiding Urban Sign's monetary obligations under the CBA that never materialized. [Docket No. 16 ¶¶ 36, 40.]

On September 8, 2023, Plaintiffs filed their initial Complaint against Defendants, and on May 6, 2025, Plaintiffs filed the operative First Amended

Complaint alleging Defendants failed to (i) comply with audit requests as required by the CBA, [Docket No. 16 ¶¶ 42–56]; or (ii) post the required surety bond for wage and benefit contributions, [*id.* ¶¶ 57–60.] On October 2, 2025, Plaintiffs filed executed summonses averring they effected substituted service of process on all three Defendants through the New Jersey Secretary of the Treasury on various dates in August. [Docket Nos. 20–22.]

Also on October 2—more than twenty-one days after service on the Secretary—Plaintiffs requested an entry of default, [Docket No. 23], which the Clerk entered the next day. Plaintiffs' Motion for Default Judgment followed on August 11, 2026. [Docket No. 25.] Plaintiffs seek an order compelling Defendants to submit to audits for the relevant period of September 1, 2019, through May 6, 2025, as well as reasonable attorneys' fees and costs totaling $30,228.20. [Docket No. 25-7 at 3; Docket No. 25 Ex. II.]

## II. LEGAL STANDARD

Courts may enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action. FED. R. CIV. P. 55(b)(2); *Chanel v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Although the Third Circuit prefers "that cases be disposed of on the merits whenever practicable," *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984), district courts can and do grant default judgments where litigants fail to appear and engage with the litigation, *see, e.g.*,

*Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006) (upholding default judgment on appeal). In assessing a motion for default judgment, courts accept all well-pleaded factual allegations as true—other than those regarding damages—but do not accept a plaintiff's legal conclusions. *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

Once the Clerk enters a default and a party moves for default judgment, the Court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the [c]omplaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Joe Hand Promotions, Inc. v. Batra*, 2017 WL 838798, at *2 (D.N.J. Mar. 2, 2017). Additionally, the following three factors guide whether a court should grant a default judgment: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

## III. ANALYSIS

### A. Jurisdiction and Service of Process

A district court must ascertain its jurisdiction over both the subject matter and the parties before entering a default judgment. *HICA Educ. Loan Corp. v. Surikov*, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015). The Court has federal question subject

matter jurisdiction, 28 U.S.C. § 1331, as Plaintiffs assert claims under ERISA, a federal statute conferring a private right of action, 29 U.S.C. § 1132(a); *see also* § 1132(e)(1) (ERISA's stand-alone jurisdictional statute). Urban Sign, Urban Manufacturing, and D2 Manufacturing are New Jersey-chartered business entities [Docket No. 25 Exs. K, T, Z], subject to the Court's general personal jurisdiction, *Dutch Pot Jamaican Restaurant, Inc. v. XPakk, LLC*, 2026 WL 700003, at *3 (D.N.J. Mar. 12, 2026) (LLCs and corporations are both at home (1) where they maintain their principal place of business and (2) in their states of organization and incorporation respectively); *Finn v. Great Plains Lending, LLC*, 2016 WL 705242, at *3 n.3 (E.D. Pa. Feb. 23, 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)) (finding *Daimler*'s holding that "neither Daimler [a corporation] nor MBUSA [an LLC] is incorporated or has its principal place of business in California" created the same general personal jurisdiction test for both corporations and LLCs).

But before a district court may exercise its jurisdiction, it must find Plaintiffs properly served Defendants with process. *See Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991) (explaining that effective service of process is a prerequisite to exercising personal jurisdiction). The party asserting the validity of service bears the burden of proof by a preponderance of the evidence. *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993). If service of process is valid, then so too is this Court's exercise of personal jurisdiction over Defendants.

Plaintiffs properly effected service on Defendants. Federal courts permit service of process using methods authorized by the law of the state in which the court sits.

FED. R. CIV. P. 4(h). When a corporation fails to properly maintain its registration with the state, New Jersey allows litigants to effect "substituted" service of process on the Secretary of the Treasury. N.J. Stat. Ann. § 2A:15-30.1(b)(1); *see also Trs. of United Food & Com. Workers Union v. Union Org. for Soc. Servs.*, 2023 WL 3862039, at *3 (D.N.J. June 6, 2023) (finding service of process appropriate under § 2A:15-30.1, but untimely effected). The same is true for limited liability companies. *MTAG v. Tao Invs., LLC*, 476 N.J. Super. 324, 337–38, 299 A.3d 833, 842 (2024) (citing N.J. Stat. Ann. § 42:2C-17(b)). Here, Plaintiffs served the Secretary of the Treasury only after attempting service at all three Defendants' registered offices—which process servers found vacant.[1] Service of process and personal jurisdiction in this Court are proper.

**B. Urban Manufacturing and D2 Manufacturing are Urban Sign's alter egos.**

Before reaching whether Plaintiffs bring legitimate causes of action, the Court evaluates the threshold question of whether Plaintiffs adequately plead that Urban Manufacturing and D2 Manufacturing are alter egos of Urban Sign and thus are subject to the same collection and reporting requirements under ERISA and the CBA. They do. Courts may impute ERISA liability across alter-ego entities ***so long as*** plaintiffs allege the alter-ego directly committed the ERISA violations alleged. *Trs. of*

[1] Urban Sign and D2 Manufacturing share a registered office address at 411 S. 6th Street in Vineland. [Docket No. 25 Exs. K, Z.] Neither business existed at that address when process servers arrived. [*Id.* Exs. Q, AA.] Urban Manufacturing's registered office is 527 E. Chestnut Avenue in Vineland. [*Id.* Ex. T.] No such business existed at that address when process servers arrived, and the entrance was blocked with a locked gate. [*Id.* Ex. U.]

*the N.J. B.A.C. Health Fund v. Bryant Caulking and Waterproofing, Inc.*, 2017 WL 784944, at *5 (D.N.J. Mar. 1, 2017). Plaintiffs do that here. Plaintiffs allege Urban Manufacturing and D2 Manufacturing were created ***solely*** to commit ERISA violations by evading Urban Sign's obligations under the CBA.

And Plaintiffs sufficiently allege Defendants are all alter egos of each other. In ERISA cases, an entity is an employer's alter-ego "when [the] multiple entities constitute a single integrated enterprise marked by the absence of an arm's length relationship." *Shopman's Local Union 502 Pension Fund v. Samuel Grossi & Sons, Inc.*, 578 F. Supp. 3d 698, 706–07 (E.D. Pa. 2022) (citations omitted); *see also id.* at 707 (collecting cases). The touchstones of such integration are "substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership." *N.J. Bldg. Laborers' Statewide Benefit Funds and Trs. Thereof v. Demza Masonry, LLC*, 2019 WL 6493944, at *5 (D.N.J. Dec. 3, 2019). "[A]n intent to evade [ERISA] is [also] an important, but not an essential, factor." *Id.* (alterations in original) (quoting *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 146 (3d Cir. 1994)). And the "test is applied flexibly in light of the federal policy of piercing the corporate veil to protect employee benefits." *Id.* (citing *Ret. Plan of UNITE HERE Nat'l 7 Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010)) (citation modified).

Plaintiffs allege all the necessary overlap to find Urban Manufacturing and D2 Manufacturing are alter egos of Urban Sign and each other. The Complaint alleges Seth Davis chartered and operates all three entities, [Docket No. 16 ¶¶ 35(a), 39(a)];

all three entities provide the same services, [*id.* ¶¶ 35(d), 39(c)]; share operations, management, and control of labor relations, [*id.* ¶¶ 35, 39]; and equipment, location, and customer base, [*id.* ¶¶ 35(e); Docket No. 25 Exs. K, T, Z]. And Plaintiffs allege both Urban Manufacturing and D2 Manufacturing were formed to avoid Urban Sign's obligations under the CBA and ERISA. [Docket No. 16 ¶¶ 36, 40.] These allegations establish the three entities form a single integrated enterprise under ERISA and permit imputing Urban Sign's obligations and liability under the CBA to both Urban Manufacturing and D2 Manufacturing.

### C. Legitimate Causes of Action

Accepting the complaint's factual allegations as true, *Polidoro*, 675 F. App'x at 190, Plaintiffs plead viable claims against Defendants. ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. If an employer fails to contribute to an employee benefit plan as required by a CBA, ERISA allows plan participants, beneficiaries, and fiduciaries to bring a civil enforcement action against the employer. *Id.* § 1132(a). And crucially both the CBA Urban Sign signed and statutes require audits and recordkeeping to ensure compliance. [Docket No. 16 ¶¶ 1–2]; *see, e.g.*, 29 U.S.C. §§ 1023, 1059.

Plaintiffs allege Defendants agreed to abide by the CBA by employing Union workers. [Docket No. 16 ¶¶ 28–30.] Under the CBA, Defendants agreed to, among

other things, contribute fringe benefits to the Funds and pay the Union dues check-offs. [*Id.*; *see, e.g.*, Docket No. 25-3 § 6.3 ("[T]he individual Employer will forward monthly to NEBF's designated local collection agent an amount equal to 3% of his gross monthly labor payroll paid to, or accrued by the employees in this bargaining unit[.]").] Plaintiffs suspect Defendants failed to make their required contributions because it appears they never received ***any contributions*** after Urban Sign signed the CBA in September 2019. [*See, e.g.*, Docket No. 16 ¶ 59 (noting the Trustees or Union never received weekly contributions ***or*** a security deposit as an alternative).]

District courts in the Third Circuit—including this one—repeatedly find similar allegations state viable claims. *See, e.g.*, *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 443–44 (D.N.J. 2024) (Bumb, C.J.) (dealing with delinquent benefit contributions generally); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Eagle Indus. Painting, LLC*, 2022 WL 5169532, at *3 (D.N.J. Oct. 4, 2022) (same); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Sky High Mgmt., LLC*, 2020 WL 1698784, at *3 (D.N.J. Apr. 7, 2020) (same); *Trs. and Fiduciaries of Iron Workers Dist. Council (Philadelphia and Vicinity) Benefit and Pension Plans v. SJF Iron Works, Inc.*, 2026 WL 1723857, at *5 (D.N.J. June 15, 2026) (ordering defendant to comply with payroll audit); *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Independent Wallcovering, Inc.*, 2022 WL

4773694, at *8 (D.N.J. Oct. 3, 2022) (same). Plaintiffs thus plead viable ERISA claims.

### D. *Chamberlain* Factors

The *Chamberlain* factors support entering default judgment. First, Plaintiffs would suffer prejudice without a default judgment because it is the only avenue to vindicate their contractual and statutory rights. *See Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) ("Plaintiff has no other means of seeking damages for the harm allegedly caused by Defendant."). Indeed, "because delinquent contributions can negatively impact the Plaintiffs' ability to pay their beneficiaries, Plaintiffs would be prejudiced if default judgment was not entered in their favor." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Cape Sign Serv., Inc.*, 2021 WL 5564238, at *3 (D.N.J. Nov. 29, 2021) (citation modified); *see also Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. J.B.J. Mgmt. LLC,* 2021 WL 1660862, at *3 (D.N.J. Apr. 27, 2021). And without a court order compelling the production of audit records, Plaintiffs would have no means of compelling Defendants' compliance with document requests. *SJF Iron Works, Inc.*, 2026 WL 1723857, at *5; *Independent Wallcovering, Inc.*, 2022 WL 4773694, at *7.

Second, Defendants do not present a meritorious defense because they failed to appear in this action or respond to Plaintiffs' Complaint. Given Defendants' failures, the Court "cannot [and need not] consider any defenses" before issuing default

judgment. *J.B.J. Mgmt.*, 2021 WL 1660862, at *3; *see also Eagle Indus. Painting*, 2022 WL 5169532, at *3 ("Defendant has not presented a meritorious defense because it has not filed an answer or otherwise defended itself[.]"); *Peterson v. Boyarsky Corp.*, 2009 WL 983123, at *4 (D.N.J. Apr. 8, 2009) (finding court need not evaluate defenses if litigant fails to respond to complaint).

Third, the Court finds Defendants are culpable in the default. Defendants are presumed culpable where they fail to answer, move, or otherwise respond to a lawsuit. *Air Prods. and Chems. Inc. v. Helium Plus, Inc.*, 2023 WL 6938213, at *2 (D.N.J. Oct. 20, 2023); *Cape Sign Serv.*, 2021 WL 5564238, at *3; *Sky High Mgmt.*, 2020 WL 1698784, at *3 ("The company's failure to respond 'demonstrates [its] culpability in its default,' and '[t]here is nothing before the Court to show that [its] failure to file an answer was a result of anything other than willful negligence.'") (alterations in original) (quoting *Teamsters Health & Welfare Fund of Phila. and Vicinity v. Dubin Paper*, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012)).

**E. Damages**

Plaintiffs seek two forms of relief. First, Plaintiffs seek an order requiring Defendants to comply with a payroll audit. Such relief is frequently granted in ERISA cases. *See, e.g.*, *SJF Iron Works, Inc.*, 2026 WL 1723857, at *5–6; *Independent Wallcovering, Inc.*, 2022 WL 4773694, at *7–8. Second, Plaintiffs seek a money judgment for $30,228.20 for reasonable attorneys' fees and costs, [Docket No. 25 Ex. II], which ERISA allows Plaintiffs to recover, 29 U.S.C. § 1132(g)(2). ERISA requires courts to award reasonable attorneys' fees and costs in civil enforcement actions

against employers for unpaid contributions. 29 U.S.C. § 1132(g)(2)(D). That extends to actions to compel records for audits too. *SJF Iron Works, Inc.*, 2026 WL 1723857, at *6; *Independent Wallcovering, Inc.*, 2022 WL 4773694, at *8.

Awarding attorneys' fees and costs to enforce § 1145 does not require determining the amount of the delinquency first. § 1132(g)(2) ("In ***any action*** under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title ***in which a judgment in favor of the plan is awarded***, the court shall award . . . [.]") (emphasis added). The plain language of the statute does not limit "judgment" to money judgments for delinquent contributions. In other words, courts may issue an attorneys' fee award exclusively for issuing a judgment compelling an audit caused by known § 1145 violations, even when the final amount of the delinquency is unknown. That is what Plaintiffs do here. Although the amount of Defendants' delinquency is unknown, Plaintiffs allege that Defendants had employees and conducted business operations while never making ***any*** contributions. [Docket No. 16 ¶ 59.] Those allegations demonstrate ***some*** delinquency exists.

To determine whether a request for attorneys' fees is reasonable under ERISA, courts perform the lodestar calculation by "determin[ing] the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate." *Metro Auto Ctr.*, 501 F.3d at 290. A party seeking attorneys' fees must provide "fairly definite information as to hours devoted to various general activities, *e.g.*, partial discovery,

settlement negotiations, and the hours spent by various classes of attorneys." *Id.* at 291 (quoting *Evans v. Port Auth.*, 273 F.3d 346, 361 (3d Cir. 2001)).

Plaintiffs had one partner and two associates work on this matter with the aid of paralegals. [Docket No. 25-1 ¶ 36.] The partner billed at $200 per hour, the associates $175 per hour, and the paralegals $90 per hour. [Docket No. 25 Ex. II.] Although Plaintiffs did not provide documentation supporting the reasonableness of their rates, courts find rates like theirs are reasonable in similar matters. *Cape Sign Serv.*, 2021 WL 5564238, at *4 ($175 for attorneys and $70 for paralegals reasonable five years ago); *J.B.J. Mgmt.*, 2021 WL 1660862, at *3 (same); *Independent Wallcovering*, 2022 WL 4773694, at *3 (same rates as *Cape Sign Serv.* four years ago); *see also Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 2012 WL 608483, at *5 (D.N.J. Feb. 23, 2012) ($250 per hour a reasonable attorney rate in contested ERISA matter).

Given the detailed invoices provided, the substantive drafting and revisions reflected therein, the diligent research performed to track down the three defendants, and the additional complexity of dues-evading entities in this case, the Court finds Plaintiffs' attorneys' fees are reasonable. And it appears, where possible, counsel enlisted paralegals to conduct research and prepare first drafts of documents to reduce costs. Plaintiffs' costs are also reasonable and proportionate to Plaintiffs' repeated attempts to effect service on multiple entities. *See, e.g.*, *Independent Wallcovering*, 2022 WL 4773694, at *3 (finding $551 in costs reasonable).

There is one discrepancy. The client ledger Plaintiffs submitted and the total costs counsel claims are off by the $405 filing fee to initiate this case, which is also

missing from the submitted ledger. [Docket No. 25 Ex. II.] Nevertheless, because the costs add up, and the Court has evidence (by the docketing of the Complaint in this action) that the $405 fee was paid, the Court awards Plaintiffs the full $30,228.20 requested.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiffs' Motion for Default Judgment, [Docket No. 25], and enters judgment against Defendants for $30,228.20 in reasonable attorneys' fees and costs. Further, the Court **GRANTS** Plaintiffs' request to compel Defendants' compliance with contractual and statutory audits, and the Court will retain jurisdiction over this matter to issue an additional judgment for any delinquent amounts discovered by the audit, to the extent any are found.

An accompanying Order of today's date shall issue.

**October 31, 2026**
Date

**/s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge